UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

AT&T MOBILITY SERVICES LLC                                              PLAINTIFF

v.                                              CIVIL ACTION NO. 3:17-cv-00649-CRS

BRANDY PAYNE                                                            DEFENDANT

## MEMORANDUM OPINION

This matter is before the court on motion of Plaintiff, AT&T Mobility Services LLC ("AT&T"), moving the court to compel arbitration of state court claims pending in the Jefferson County, Kentucky Circuit Court in *Payne v. AT&T Mobility LLC., et al.*, Case No: 17-CI-000706, and for a preliminary injunction enjoining the state court proceedings. For the reasons stated, the Plaintiff's motion will be **GRANTED**.

   I.   BACKGROUND

The Defendant, Brandy Payne ("Payne"), was employed by AT&T Mobility Services LLC ("AT&T") at all times relevant to this action. (DN 1, ¶¶ 7-15.) AT&T alleges that on March 15, 2013, AT&T sent Payne an email to her unique employee email address titled "Action Required: Management Arbitration Agreement." (DN 1, Knight Decl.) According to AT&T, the email advised Payne that the agreement would apply to all future claims between Payne and the Company if she did not affirmatively "opt-out" of the agreement within 60 days. (*Id*. at Exh. 2.) The email provided a link to the web page containing the text of the entire Arbitration Agreement ("Agreement"), which then provided a link to the site where the user could electronically register to opt out of the Agreement. (*Id*. at Exh. 1, Exh. 2.)

AT&T alleges that it sent additional emails to Payne at her employee email address, identical to the email sent on March 15, on March 30, 2013, April 14, 2013, April 29, 2013, and May 14, 2013. (*Id.*) AT&T further testifies that Payne never opted out of the Agreement and that it has no reason to believe the emails were not delivered to her employee email address. (DN 1, Knight Decl.) Payne was continuously employed by AT&T until her separation with the company on January 4, 2015.

In February of 2017, Payne filed a Complaint in Jefferson Circuit Court, Kentucky ("State Court Action") against AT&T alleging sexual harassment, hostile work environment, and retaliation. (DN 1, Exh. A.) The State Court Action remains pending in Jefferson Circuit Court.

AT&T then filed a Complaint in this court on October 24, 2017, seeking an order compelling the arbitration of Payne's claims against AT&T pursuant to the Federal Arbitration Act and for an injunction prohibiting Payne from pursuing the State Court Action while the parties arbitrate. (DN 1.) AT&T simultaneously filed a Motion to Compel Arbitration and Motion for Preliminary Injunction ("Motion to Compel"). (DN 4.)

Rather than file a response to AT&T's Motion to Compel, Payne filed a motion seeking leave to conduct arbitration-related discovery prior to filing a response to the Plaintiff's Motion to Compel. (DN 13.) Therein, Payne requested limited discovery to establish that "she did not receive Plaintiff's alleged offer to enter into an agreement to arbitrate." (*Id.*) This court denied Payne's motion for leave to conduct arbitration-related discovery and allowed Payne seven days from the entry of the order to respond to AT&T's Motion to Compel. (DN 18.) Payne having failed to respond within the seven day period afforded by the court, AT&T's Motion is ripe for review.

## II. DISCUSSION

The Federal Arbitration Act (FAA) makes agreements to arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA further requires courts to stay litigation of claims pending arbitration of those claims "in accordance with the terms of the agreement" and requires courts to compel arbitration of such claims upon the motion of either party to the agreement. *Id*. at §§ 3-4.

The Agreement at issue in this case expressly states that it is "governed by the Federal Arbitration Act, 9 U.S.C. § 1 and following, and evidences a transaction involving commerce." (DN 1, Knight Decl., Exh. 2.) Before compelling arbitration, however, a court must first determine whether "a valid agreement to arbitrate exists between the parties and… the specific dispute falls within the substantive scope of that agreement." *Tillman v. Macy's, Inc.*, 735 F.3d 453, 456 (6th Cir. 2013) (quoting *Javitch v. First Union Secs., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003)).

### a. *The Validity of the Agreement*

Kentucky contract law controls in this case. Under Kentucky law, a valid contract consists of "offer and acceptance, full and complete terms, and consideration." *Commonwealth v. Morseman*, 379 S.W.3d 144, 149 (Ky. 2012). AT&T contends, and the court agrees, that the facts evidence a valid contract under Kentucky law. AT&T states that the five emails sent to Payne concerning the Agreement "plainly constituted offers to enter into an agreement to arbitrate future claims. Those emails specifically laid out the material provisions of the Agreement… and specified a method and deadline for acceptance." (DN 4, 7.) AT&T properly supported these assertions and Payne did not respond. Therefore, AT&T extended a valid offer to Payne to enter into an agreement.

Further, AT&T has provided sufficient evidence for the court to conclude that Payne accepted its offer to enter into an agreement to arbitrate future claims. Under Kentucky law, continuing employment may constitute assent to be bound by the terms of an agreement. *See Parts Depot, Inc. v. Beiswenger*, 170 S.W.3d 354, 362 (Ky. 2005) ("An express personnel policy can become a binding contract once it is accepted by the employee through his continuing to work when he is not required to do so.") (internal citation omitted). The Sixth Circuit has likewise found that continuing employment may constitute assent to enter into a binding contract to arbitrate future claims under the FAA. *See Tillman*, 735 F.3d at 461 ("[B]ecause [the plaintiff] accepted the offer by continuing her employment with [the defendant] without returning an opt-out form, it follows that [the plaintiff] knowingly and voluntarily assented to all of its terms, including this clearly stated waiver of the right to trial by jury.").

AT&T argues that the language of the five emails sent to Payne clearly stated the terms of acceptance: "If you do not opt out by the deadline, you are agreeing to the arbitration process as set forth in the agreement." (DN 1, Knight Decl., Exh.1.) AT&T alleges that Payne continued her employment with AT&T without exercising her right to opt out of the Agreement. As Payne did not respond to these allegations, the court finds that Payne accepted the terms of the Arbitration Agreement.

The Court additionally finds that AT&T's offer conveyed full and complete terms of the agreement between the parties. Under Kentucky law, an "enforceable contract must contain definite and certain terms setting forth promises of performance to be rendered by each party." *Kovacs v. Freeman*, 957 S.W.2d 251, 254 (Ky. 1997) (citing *Fisher v. Long*, 172 S.W.2d 545 (Ky. 1943)). The evidence offered by AT&T shows that its emails to Payne explained that choosing not to opt out would result in the use of "independent, third-party arbitration rather than

courts or juries to resolve legal disputes." (DN 1, Knight Decl., Exh. 1.) Payne not otherwise disputing this fact, the court finds that there existed full and complete terms.

Lastly, AT&T has offered unrefuted evidence that there existed adequate consideration – namely, that the agreement to arbitrate future claims was mutual: "[This Agreement] means that you and AT&T are giving up the right to a court or jury trial on claims covered by the Agreement." (DN 1, Knight Decl., Exh. 1.) Consideration exists when parties choose to mutually give up their right to a trial by jury. *See, e.g., Kruse v. AFLAC Int'l, Inc.*, 458 F. Supp.2d 375, 385 (E.D. Ky. 2006) ("[A]n arbitration clause requiring both parties to submit equally to arbitration constitutes adequate consideration."). As such, the Agreement at issue in this case is a valid and enforceable contract.

### b. *The Scope of the Agreement*

The court must now determine whether the claims of the State Court Action fall within the scope of the Arbitration Agreement. *Tillman*, 735 F.3d at 456. The text of the Agreement states, in relevant part, that it applies to "any claim that you may have against… any AT&T Company" or "its present or former officers, directors, employees, or agents in their capacity as such or otherwise." The Agreement states that it applies to any claims "arising out of or related to your employment or termination of employment with the Company." (DN 1, Knight Decl., Exh. 2.) The Agreement further asserts that such claims include, among others, those alleging retaliation, discrimination, and harassment. (*Id.*) The broad language of this Agreement applies to the claims brought by Payne in the State Court Action. Consequently, Payne's claims must be arbitrated pursuant to the terms of the Agreement.

### c. *Preliminary Injunction*

District Courts may enjoin state court proceedings by applying the legal and equitable standards for injunctions generally, including the Anti Injunction Act, 28 U.S.C. § 2283.[1] The Sixth Circuit has found that enjoining state court proceedings is "necessary to protect or effectuate [the district court's] judgments" when a district court finds that an arbitration agreement is valid and enforceable. *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 894 (6th Cir. 2002). Further, enjoining the state court proceedings, in light of the finding that the Arbitration Agreement is valid and enforceable, would prevent irreparable harm against the movant by avoiding the expense and delay of trial. Likewise, public interest would be served by following the strong federal public policy of favoring enforcement of arbitration agreements. *See Seawright v. American General Financial Services, Inc.*, 507 F.3d 967, 972 (6th Cir. 2007) ("[C]ourts must respect the liberal federal policy favoring arbitration agreements.") (internal citation omitted). For these reasons, the State Court Action will be enjoined.

### III. CONCLUSION

For the reasons stated, the court will **GRANT** the Plaintiff's motion to compel arbitration and **GRANT** the Plaintiff's motion for a preliminary injunction. An order will be entered in accordance with this opinion.

February 16, 2018

**Charles R. Simpson III, Senior Judge**
**United States District Court**

---

[1] 28 U.S.C. § 2283 states: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."